1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

SLIMAN FARRAN and FADUL FARRAN
dba JERUSALEM CAFÉ and JERUSALEM
RESTAURANT and CAFE,

12

Plaintiffs,

Case No. C06-5116FDB

13

v.

14

JIMI ABDULLAH JOUZINE,

ORDER DENYING PLAINTIFFS'
MOTION FOR TEMPORARY
RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

15

Defendant.

16

**INTRODUCTION**

17

18

This cause of action arises since Defendant Jouzine started a restaurant business that

Plaintiffs, the Farrans, allege is using trade secrets and trade dress unfairly to the goodwill and profits

19

built up by the Farrans.  The Farrans allege that Jouzine once was an employee and learned the

20

Farrans' trade secrets from that employment.

21

The Farrans assert that Jouzine's new restaurant, the Galilee Café, is virtually identical to the

22

Jerusalem Café in every respect, from its overall look and fee, to its Middle-Eastern theme, its

23

interior decor, its menu items and its use of unique herbs and spices, as well as its presentation of

24

appetizers and entrees.  The Farrans cite the following elements that Jouzine has copied:

25

26

ORDER - 1

1  (1) identical vinyl tablecloths (unusual because the Farrans' are cut from a roll of vinyl, not ordered

2  from a restaurant supply store); (2) identical bamboo chairs; (3) a similar type of arch; (4) similar

3  sequence of tables; (5) faux painting on the walls, including a mural of a Mediterranean landscape

4  with palm leaves in the corners; (6) depiction of the mural on the menu just as the Jerusalem Café

5  depicts its mural on its menu; (7) same brown sponge painting on walls and ceilings; (8) same paint

6  color on the restroom door; (9) painted bricks and windows that emulate the painted bricks and

7  arched windows in the Jerusalem Café; (10) painted wood shelves in the Mediterranean mural

8  identical to the wood shelves at the Jerusalem Café; (11) copied practice of presenting free

9  appetizers to the customer after the customer has ordered and include the same proprietary

10  Mediterranean potato salad, red and white cabbage, and Turkish salad appetizers; (12) entrees are

11  presented exactly like the Jerusalem Café surrounded by a mixture of Mediterranean salads, Tabouli,

12  and a proprietary rice dish; (13) identical off-white plates with brown edges and nearly identical

13  teacups; (14) hot tea is served with fresh mint; (15) Turkish coffee, which Jouzine calls

14  Mediterranean coffee) is served in large glasses on a small saucer; (16) uses a pyramid sign outside

15  his restaurant with the same types and prices for daily lunch specials; (17) serves only one dessert –

16  Baklava; (18) uses the Farrans' secret recipes for (a) chicken schnitzel, (b) a mixture of lamb and

17  beef called "Grilled Saniah" at the Jerusalem Café and "Grilled Schwarma" at the Galilee Café, and

18  (c) the "Jerusalem Special" shown on the Galilee Cafe's menu as the "Galilee Special"; and (19)

19  refers to the Galilee Café as a "family owned" business.

20          The Farrans assert that if their motion for injunctive relief is not granted, Jouzine will be

21  allowed to profit from copying almost every facet of the Farrans' business; from vendor lists, to their

22  business methodology, to the overall look and feel of the Jerusalem Café restaurants, right down to

23  the Farrans' top secret recipes and methods of preparing menu items, all of which constitute closely

24  guarded trade secrets and valuable trade dress that, together, create the unique Jerusalem Café dining

25  experience.

26  ORDER - 2

1   Jouzine has responded and the matter is ready for the Court's decision.

## PRELIMINARY INJUNCTION STANDARD
## AND APPLICABLE LAW

To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor. *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 314-15 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979); *see also, Sega Enterprises LTD. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985), *Accord, United States v. Nutri-cology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992).

To demonstrate a likelihood of success on the merits in a trade dress action, a party seeking injunctive relief must prove (1) possession of distinctive trade dress and (2) Defendant's trade dress is so similar that the relevant public is likely to be confused as to the source of the goods or services. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 769 (1992), *rehearing denied*, 505 U.S. 1244 (1992).

Trade dress concerns the totality of any elements in which a product or service is packaged or presented. J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* § 8:1. Trade dress protection exists only if it can be proven that the trade dress identifies and distinguishes the plaintiff as source. *Id.* The plaintiff must identify the discrete elements that make up the asserted trade dress. *Id.* § 8:3. The plaintiff has the burden of proving non-functionality in a case of unregistered trade dress. *Id.* § 8:7 "Generic" trade dress has been held to be inappropriate for protection – that is, if the trade dress a mere product theme or style of doing business or is such a hackneyed or common design that it cannot identify any particular source. *Id.* 8:6.1. On the other

ORDER - 3

1 hand, trade dress that is inherently distinctive is protected under the Lanham Act without a showing

2 that it has acquired secondary meaning, but when the design is a common one, secondary meaning

3 must be proven. *Id.* § 8:11.1.

## DISCUSSION

5       The Farrans state that they seek trade dress protection for the Jerusalem Café restaurant on

6 Chkalov Drive, although there are two other Jerusalem Cafes at other locations.  The Farrans have

7 cited nineteen elements, listed above, that Jouzine has copied, and evidently asserts these as the

8 elements of their trade dress at the Jerusalem Café on Chkalov Drive.  Some of these items do not

9 constitute trade dress as they are more appropriately described as a marketing theme or style of

10 doing business (*see McCarthy*, § 8:6: presentation of free appetizers, entree presentation, manner of

11 serving coffee, pricing of lunch specials, serving one dessert, naming the "special" after the café, and

12 referring to the café as a "family owned" business. *Aromatique, Inc. v. Gold Seal*, 28 F.3d 863 (8th

13 Cir. 1994)("Trade dress does not protect one from a competitor's imitation of one's marketing

14 concept.") *See also, Haagen-Dazs, Inc. v. Frusen Gladje, Ltd.*, 493 F. Supp. 73 (S.D.N.Y. 1980)(no

15 protection for a marketing scheme promoting Scandinavian-type premium ice cream.).  The

16 challenge to the use of certain "secret" recipes does not constitute trade dress, and the food itself is a

17 functional item, as it is why customers come to the restaurant.

18       Most of the Farrans' asserted trade dress elements are not distinctive: the vinyl cloths that

19 anyone can order from a restaurant supply store, bamboo chairs, depiction of an arch, sequence of

20 tables, brown sponge painting on the walls, color on the restroom door.

21       The mural may be distinctive as one-of-a-kind, and this mural only exists in the Jerusalem

22 Café on Chkalov Drive.  The mural depicts stone buildings and a church roofline seen through a

23 trompe l'oeil of a double stone arch with palm fronds appearing in the upper corners.  Jouzine has

24 two murals in his restaurant, the Galilee Café, but they depict different scenes.  One is rectangular

25 and is a trompe l'oeil of a beach along the Sea of Galilee with a crane in flight, a small fishing boat,

26 ORDER - 4

1    and a palm tree.  Opposite the small, rectangular mural is another mural covering the entire wall

2    depicting another Sea of Galilee scene and viewed through a series of arches described as an arched

3    portico with Romanesque pillars.  There are hills in the far background and palm fronds in the upper

4    corners of the mural.  Jouzine says that the murals were created based on photographs and pictures

5    found on the internet and are representative of the feel of those pictures and intended to evoke the

6    tranquility of the Sea of Galilee.

7           There is much dissimilarity between Jouzine's Galilee Café and the Farrans' Jerusalem Café,

8    and there is insufficient similarity to support the necessary element of likelihood of confusion as to

9    the source of the restaurant service.  The so-called *Sleekcraft* factors are applied in a trade dress case

10   as well as in trademark actions when examining the issue of likelihood of confusion.  Jouzine submits

11   that while the following factors likely favor the Farrons: the proximity and relatedness of goods and

12   services, marketing channels, likelihood of expansion into other markets, and degree of care by

13   purchasers, the following factors favor Jouzine:

14      *Strength:*  In this case, the Farrons' trade dress is not strong, as most of the elements are

15   generic. The mural is the only element that is distinctive, and that mural has not been copied by

16   Jouzine.

17      *Similarity:* There is little similarity other than a generic feel of a particular eastern

18   Mediterranean area.  Jouzine has a Sea of Galilee theme, while the Farran's them is Jerusalem,

19   including photographs of Holy Land areas and other items representative of the area.   The marquees

20   on the front of each restaurant are different, as can be seen in the photographs submitted by Jouzine

21   as Exhibit B to Declaration of Beatty.  The bamboo chairs are merely similar, and he counter chairs

22   are different.  The floors in the Galilee Café are white ceramic tile, while at the Jerusalem Café, there

23   is brown carpet.  The walls in the Galilee Café are sponge painted a light yellow-brown on rough-

24   textured plaster, while at the Jerusalem Café, the brown sponge paint is on smooth walls.  The arch

25   depictions in each restaurant are different.  The lighting fixtures and counters are different.  The

26   ORDER - 5

1   menus are different as well (See Ex. B *id.*): while being a similar beige color, Jouzine's depicts his

2   small mural as an inset on the front, while the Farrans' mural covers the entire face of the menu.  The

3   name of each café is depicted different on each menu.

4          ***Defendant's Intent:*** Jouzine states that he chose his decor because he wanted a motif for an

5   Eastern Mediterranean restaurant and one that reflected his personal background, as he is from

6   Galilee; the brown and sand colors evoke the mud brick and sandstone buildings of the area; he

7   chose his tablecloths for their durability; the chairs because they are lightweight and relatively

8   inexpensive; and he wanted a motif that is sea based.

9          ***Actual Confusion:*** Jouzine contends that much of the confusion stems from people who

10  know him from when he worked at the Farrans' restaurant combined with the fact of the Farrans'

11  ownership of the only Eastern Mediterranean restaurants in the area.  The Farrans point out that

12  within a ten-mile area of their café, there are at least fifteen different Middle Eastern/Mediterranean

13  restaurants.

14         While the number of factors favoring each side is the same, the factors favoring Jouzine are

15  more persuasive that Jouzine's restaurant is not so similar as to cause likelihood of confusion.

16  Moreover, Jouzine is not using all of the elements that the Farrans assert as their trade dress.  Most

17  of the Farrans' asserted trade dress elements are generic, however.

18         Neither have the Farrans made a showing of likelihood of success on their dilution claims, as

19  the testimonials that they submit are not convincing that the asserted trade dress is famous.

20         The trade secret asserted in the menu items is problematic as well, as the Farroas' have not

21  demonstrated the requisite behavior for protecting their recipes as secrets.  Moreover, Jouzine, has

22  demonstrated that many of the menu items he uses are the type that is common in Eastern

23  Mediterranean cooking and available on the internet.  He submits that his mother has helped him with

24  recipes, he uses Cajun spices in some recipes, but not all, and uses a spice mix from a supplier with

25  an 800 number that is a different brand from that used by the Farrans.

26  ORDER - 6

The balance of hardships tips in Jouzine's favor, because more harm would befall him if he were wrongly restrained than would befall the Farrons.  Jouzine used his savings to start his business, and could be pushed too far financially by having to "rebrand" as the Farrons put it.

The Farran's Motion for Expedited Discovery is denied in view of the Court's decision on the motion for injunctive relief, and discovery will proceed in the ordinary course.

NOW, THEREFORE,

IT IS ORDERED:

1.      Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. # 6] is DENIED.

2.      Plaintiffs' Emergency Motion for Expedited Discovery [Dkt. # 5] is DENIED.


DATED this 31st day of March, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 7